UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
M&T MORTGAGE CORPORATION,

              Plaintiff,

    -against-                             ORDER
                                           03-CV-5657(JS)(MLO)
ST. STEPHENS BAPTIST CHURCH, INC.,

              Defendant.
----------------------------------X
Appearances:
For Plaintiff:     Joseph C. Savino, Esq.
                    Zavatsky, Mendelsohn, Gross,
                    Savino & Levy, LLP
                    33 Queens Street
                    P.O. Box 510
                    Syosset, New York 11791

For Defendant:     Frank J. Hancock, Esq.
                    117-16 Queens Boulevard
                    Forest Hills, New York 11375

SEYBERT, District Judge:

       Currently pending before this Court is a motion by the Plaintiff, M&T Mortgage Corporation ("Plaintiff" or "M&T"), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. M&T asserts that there are no material facts at issue and, thus, this Court should grant the motion. Defendant, St. Stephens Baptist Church, Inc. ("Defendant" or "St. Stephens"), opposes Plaintiff's motion and cross-moves for partial summary judgment. As discussed below, this Court finds that there are no material issues of fact which need to be determined at trial. Accordingly, this Court can, and indeed must, award summary

judgment to the Plaintiff in the instant action.

BACKGROUND

The background of this case is not in serious dispute. The parties agree as to the fundamentals of the transactions which occurred. Approximately one year ago, however, when the parties initially attempted to file the instant motions, the Court rejected the Defendant's counter-statement of undisputed facts several times. After repeated failures[1] to submit a proper counter-statement this Court ruled that the Plaintiff's statement of undisputed facts was deemed admitted. Thus, the facts listed below are from Plaintiff's 56.1 Statement of Undisputed Facts and taken largely, at times verbatim, from the statement of facts contained in the Plaintiff's motion for summary judgment.

Procedural History

In 1998-1999, St. Stephens, purchased forty-six properties, each financed with a loan originated by Mortgage Lending of America, Inc. ("MLA"). Each of these loans is insured by the United States Department of Housing and Urban Development ("HUD") under a federal program created pursuant to Section 203(k)

---

[1] Defendant was afforded three opportunities, and five months, to submit an appropriate counter-statement. On July 14, 2004, Defendant's counsel also appeared at a pre-motion conference before this Court. At that time, counsel was advised to submit a counter-statement by July 21, 2004. Counsel, to this date, has not submitted a counter-statement which cites to admissible evidence.

of the National Housing Act. M&T purchased, on the secondary market, all forty-six of these loans, paying a premium to do so.

After St. Stephens defaulted on each of the loans, M&T commenced forty-six actions -- forty-three in New York County, and three (the instant action counting as the third) in Kings County -- to foreclose the mortgages given as security therefor.

All forty-three of the New York County foreclosure actions were assigned to Justice Huff who granted summary judgment in favor of M&T. In addition, Justices Dabiri and Dowd of the Supreme Court, Kings County, granted M&T's motion for summary judgment in both of the Kings County foreclosure actions. The instant action originally was filed as part of the foreclosure action before Justice Dowd. However, Justice Dowd held that M&T was required to file a separate action to foreclose the instant mortgage and could not maintain one action to foreclosure two different mortgages on two different properties securing two different obligations. Thus, Justice Dowd granted M&T's motion for summary judgment with respect to one of the loans and required that M&T commence a separate action to foreclose the other mortgage. When M&T filed this action, St. Stephens, hoping to avoid the dispositive decisions rendered by the Supreme Court in both New York County and Kings County, removed the case to this Court.

The Loan Documents

### The Note and the Mortgage

On or about January 15, 1999, St. Stephens, for the purpose of evidencing the payment to MLA of the principal sum of $350,600, executed a note, which promised to repay the principal and accrued interest.

As collateral for repayment of the indebtedness, St. Stephens executed a mortgage in favor of MLA. The Mortgage was recorded in the Office of the City Register, Kings County, on June 9, 1999, in Reel 4497, Page 2373, and the mortgage recording tax was paid. By assignment, dated January 21, 1999, MLA assigned to M&T the note and the mortgage.

The Mortgage provides, inter alia, that:

(a) M&T may require immediate payment in full of all sums secured by the Mortgage if Borrower fails to pay in full any monthly payment required by the Note or Mortgage prior to or on the due date of the next monthly payment;

(b) if M&T requires immediate payment in full, it may commence an action for foreclosure of the Mortgage and the sale of the Mortgaged Premises;

(c) in the event of a default in any monthly payment due thereunder for a period of more than fifteen days, M&T may collect a late charge in the amount of four percent of the overdue amount of each payment;

(d) if M&T requires immediate payment in full, M&T may require Borrower to pay all costs and expenses, including attorneys' fees, incurred in enforcing the Note and the Mortgage with interest thereon from the date of disbursement at the rate set forth therein.

### The Defaults and Failure to Cure Upon Notice

St. Stephens has defaulted under the Mortgage because it has failed to pay M&T the monthly installment of principal and interest due and owing to M&T on January 1, 2000 (for the period December 1, 1999 through December 31, 1999) and failed to cure its default within thirty days of the Default Notice that was sent.

### The Acceleration of the Indebtedness

After being noticed, St. Stephens failed to cure the defects, thus, M&T accelerated and declared immediately due and payable the entire unpaid principal balance of the note and mortgage as well as interest, late charges and other indebtedness. No payment was received and M&T commenced this foreclosure action.

Pursuant to the terms of the mortgage, M&T is entitled to (a) foreclose its mortgage lien, (b) entry of judgment of foreclosure, and (c) recover against St. Stephens the amount of any deficiency on the indebtedness which remains after the sale of premises.

### Amounts Due

The outstanding principal balance due on the Mortgage is the sum of $267,683.00. Through September 30, 2004, interest arrears are the sum of $116,442.53; late charges are $7,397.79; the real estate tax escrow advance balance is $32,407.78; the pro-rated mortgage insurance premium is $139.36; miscellaneous fee's and

expenses reimbursable under the mortgage are $553.00; and legal fees and expenses paid by M&T are $22,247.26. Thus, the total due under the Mortgage through September 30, 2004 is $446,870.72. Interest at a daily rate of $66.00 and legal fees and expenses continue to accrue from September 30, 2004 until the entry of judgment herein. Moreover, any other advances which must be made by M&T for property taxes, assessments, water charges, sewer rates, insurance premiums and/or other charges affecting or to protect its interest in the mortgaged premises are recoverable against St. Stephens.

> Nothing in Borrower's Answer Raises an
> Issue of Fact Sufficient to Deny or Delay
> <u>M&T's Right to Foreclose The Mortgage</u>

According to M&T, St. Stephens continues to trumpet the same affirmative defenses it has raised in the past -- namely, (a) the mortgage is unenforceable (despite St. Stephen's use of the loan proceeds to purchase the premises) as being the product of a purported fraudulent scheme orchestrated by MLA; and (b) M&T improperly handled the monies earmarked for rehabilitation of the premises--these allegations also form the basis of Borrower's counterclaim. Borrower also alleges that M&T failed to notify St. Stephens of its default and it's intention to accelerate the loan.

### M&T is a Holder-In-Due-Course of the St. Stephens Loans

In all of the other forty-five cases, the New York Supreme Court found that M&T is a holder-in-due-course of the loans. It is not disputed that M&T purchases in the secondary market many loans originated by HUD-approved lenders to HUD approved borrowers. M&T publishes daily the interest rate(s) for which it may purchase many types of loans. An originating HUD approved lender, like MLA, requests that M&T purchase a specific loan by submitting a form containing basic information about the loan such as the identity of the borrower, the property address, the type of loan, the principal amount of the loan, and the interest rate.

Once the form is submitted, M&T has the option to purchase the loan by counter-signing and returning to the lender the completed form stating the price to be paid for the loan. In this instance, M&T paid a premium of $17,698.25 (or 5.125% of the then-outstanding principal balance of the loan) for the note and mortgage.

M&T has no role in the negotiation or underwriting of the loan or in the negotiation, preparation, or execution of any of the loan documents. Rather, HUD-insured loans are negotiated and underwritten solely by the originating HUD-approved lender. M&T, like other purchasers of loans in the secondary market, relies upon

the fact that the loans are made by HUD-approved lenders and are insured by HUD. M&T avers that it is unaware of any fraudulent activity in the origination of any of the Loans that involve St. Stephens and that it is a holder-in-due-course.

### St. Stephens Ratified the Note and Mortgage

Justice Huff determined that St. Stephens ratified the note and mortgage -- which, as a matter of law, precludes any defense to foreclosure.

In sum, the following are undisputed:

(a) St. Stephens borrowed the sum of $350,600 to purchase the premises and executed the note;

(b) St. Stephens executed and delivered the mortgage as security for the indebtedness evidenced by the note;

(c) St. Stephens never sought to disavow the note and the mortgage, made numerous payments to M&T, and owns the premises;

(d) M&T purchased the note and mortgage on the secondary market, paying a premium to do so;

(e) St. Stephens defaulted under the terms of the note and mortgage by failing to make the requisite monthly payments; and

(f) St. Stephens still owns the premises and derives benefits from it.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). It is the moving party's burden to demonstrate the absence of any genuine issue of material fact. Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002)(citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)). Material facts are those which would "affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

After the movant meets his burden, it is incumbent on the non-moving party to respond with "significant probative evidence" that a dispute remains. Id. at 249. The non-moving party "may not rest upon the mere allegations . . . of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In ruling on a motion for summary judgment, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. It is within this standard that the Court analyzes the instant motions.

DISCUSSION

In the instant action M&T asserts that they are entitled to summary judgment because it is a holder-in-due-course of the note and mortgage, and, in any event, St. Stephens ratified the note and mortgage. This Court, having thoroughly reviewed the issues raised, grants M&T's motion for summary judgment. In addition, this Court finds that there is no merit and denies St. Stephen's cross-motion for summary judgement.

Res Judicata and Collateral Estoppel

M&T requests that this Court find it is a holder-in-due-course of the mortgage at issue. A holder-in-due-course is an entity that takes an instrument (1) for value, (2) in good faith, and (3) without actual knowledge that the instrument is subject to any claims against it. See N.Y. U.C.C. 3-302; Chemical Bank of Rochester v. Haskell, 51 N.Y.2d 85 (1980). This Court need not make this determination because other courts have already evaluated this issue regarding the controversy. The issue before this Court is whether the previous findings should have preclusive effect on this Court.

Res judicata and collateral estoppel bar the relitigation of issues between parties. Res judicata precludes future actions between parties on the same cause of action. See Reilly v. Reid, 45 N.Y.2d 24, 27 (1978). In New York, res judicata is applied to

all claims arising out of the same transaction or series of transactions. See O'Brien v. City of Syracuse, 54 N.Y.2d 353, 357 (1981). Moreover, the rule applies to claims which were litigated or could have been litigated in the earlier action. See Schuylkill Fuel Corp. v. B. & C. Nieberg Realty Corp., 250 N.Y. 304, 306 (1929). Similarly, collateral estoppel bars the parties from relitigating an issue which was determined in a prior litigation. See Weiss v. Manfredi, 83 N.Y.2d 974 (1994).

Here, there exist significant court decisions which have adjudicated issues between these parties. The previous decisions rendered by both Justices Huff and Dowd, involving the same issues, have made legal determinations. Those determinations gave no credence to St. Stephens assertions that (1) the loans are void and unenforceable; (2) M&T is bound by all defenses St. Stephens may have against MLA; and (3) M&T committed fraud when it obtained the instant loans. Whether this Court were to analyze the previous determinations by claim, res judicata, or by issue, collateral estoppel, the same result would be reached. The result is that St. Stephens cannot again raise those theories.

Ratification

Even assuming that res judicata and collateral estoppel did not apply in this case, which they do, M&T argues that St. Stephens ratified the loan at issue. St. Stephens does not counter

11

this argument. The Court finds that St. Stephens, through its ownership of the subject property for over five years, ratified the loans at issue. Since, St. Stephens ratified the loans at issue they are unable to assert defenses which predate M&T's purchase of the instant mortgage and note.

Ratification occurs when a party accepts a contact knowing that there would be a meritorious defense to that contract. See Edison Stone Corp. v. 42nd Street Devel. Corp., 145 A.D.2d 249 (1st Dep't 1989). Here, St. Stephens admits that they knew of the fraudulent activity long ago and that they knew of the alleged frauds that are delineated in the instant motion papers before M&T sought to foreclose on the subject properties, including the one that is the subject of this action. As M&T advises the Court, St. Stephens has, and continues to, own the premises that are the subject of this action. St. Stephens also continues to gain whatever benefits inure from said ownership. Accordingly, St. Stephens is foreclosed from asserting defenses against M&T which predate M&T's purchase of the mortgage and note.

Defenses

Although this Court is aware of St. Stephens recitation of the purported facts, there is no basis to change the previous determinations. St. Stephens discusses at great length, and with strong innuendo, several theories by which the Court should deny

12

M&T's motion for summary judgment. This Court is not convinced. With scarce, or no, legal authority, St. Stephens suggests several reasons why M&T's motion should be denied. These reasons include (1) a challenge to M&T's status as a holder-in-due-course; (2) a claim that the default notice was sent to an improper address; and (3) reference to a decision by Justice Schoenfeld. These arguments fail. In addition, both parties argue as to whom may submit an affidavit in support of a motion for summary judgment.

As to St. Stephen's argument regarding M&T's status as a holder-in-due-course there is little more to say. This issue has been litigated and decided. Moreover, St. Stephens does not submit anything other than innuendo to suggest that M&T is not a holder-in-due-course. Accordingly, this Court finds that M&T is a holder-in-due-course. St. Stephens also argues that this entire proceeding is improper because the default notice was sent to an improper address. Interestingly, however, St. Stephens does not claim that they did not actually receive the notice of default and intention to accelerate the loan. There is no merit to this argument.

St. Stephens third argument regarding Justice Schoenfeld's decision is equally unpersuasive. The represented procedural history of that case indicates that Justice Schoenfeld should not have issued the August 23, 2001 order because the case

had already been transferred to another justice. In addition, M&T sought to have the decision changed but was thwarted by St. Stephens settling that controversy before Justice Huff could render a decision. This Court gives no weight to the decision of Justice Schoenfeld.

Rehabilitation Escrow

St. Stephens cross-motion for summary judgment regarding the rehabilitation escrows must be denied. Procedurally, St. Stephens is precluded from even presenting this motion to the Court. St. Stephens failed to submit a statement of facts to this Court and did not, pursuant to this Court's individual rules, request a conference to move for summary judgment. Even on the merits, however, St. Stephens motion fails for many reasons. The motion fails because (1) the issue has already been determined by the New York Courts and (2) the escrows were properly distributed as per the loan documents.

As discussed above, both res judicata and collateral estoppel preclude St. Stephens from arguing issues that the New York courts have already determined. The New York Courts have already determined in many of the other forty-five actions that disbursements from the rehabilitation accounts were proper. Moreover, the disbursements were made exactly as the loan agreements required. The HUD website also lists the proper

procedure for disbursing funds from the rehabilitation accounts. Despite the banter from St. Stephens -- and there is literally no evidence in support of the posited theories -- this Court finds that disbursements were properly made from the rehabilitation accounts.

Deficiency Judgment

St. Stephens also contends, without citing to any authority, that M&T must commence an action not just on the mortgage but on the note to obtain a deficiency judgment. M&T responds that Section 1371 of the New York Real Property Actions and Proceeding Law specifically provides for the pursuit of deficiency judgments. The Court finds that M&T is properly advancing this action and does not need to separately commence an action on the note. St. Stephens will be responsible for any future deficiency that may remain after a foreclosure sale and its proceeds.

CONCLUSION

For all the reasons listed above, this Court GRANTS M&T's motion for summary judgment and DENIES St. Stephen's cross-motion for summary judgment. The Clerk of the Court is directed to mark this case as CLOSED.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September 27, 2005
Central Islip, New York